UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DWARF D. CANNON | * | CIVIL ACTION:  2:16-cv-013754 |
| Plaintiff | * | |
| | * | JUDGE  NANNETTE |
| VERSUS | * | JOLIVETTE BROWN |
| | * | |
| HUNTINGTON INGALLS INCORPORATED | * | SECTION "G", MAG. 4 |
| NORTHROP GRUMMAN SHIPBUILDING | * | |
| INC. | * | MAG. KAREN W. ROBY |
| Defendant | * | |
| | * | |

## MEMORANDUM IN SUPPORT OF
## RULE 56 MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

HII was plaintiff's employer, and therefore is immune from tort suits by an employee. Plaintiff's claim under 33 U.S.C. 905(b) fails because defendant is not the owner or the owner *pro hac vice* of the ships upon which plaintiff claims he was injured.  Further, a ship under construction is not legally a vessel.  Therefore, plaintiff has no claim under General Maritime Law, or 33 U.S.C. §905(b), and  there is no admiralty jurisdiction in this Honorable Court.

To the extent plaintiff has actually pled anything other than a negligence claim, he has failed to allege facts sufficient to allow an intentional tort claim to proceed.  Therefore, his suit must be dismissed.

## FACTUAL BACKGROUND

Plaintiff seeks damages for hearing loss and/or toxic chemical exposure which he allegedly suffered while employed by defendant, HII.  In his First Amended and Restated Complaint [R. Doc. 40], plaintiff claims that his action falls under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. 905(b), and he alleges negligence of facilities or vessels of which the defendant was the "owner or owner *pro hac vice.*"  He admits that at all relevant times he was defendant's employee,[1] and alleges that he was exposed to toxic fumes and excessive noise which caused him injury.[2]  He claims that defendant knew or should have known of this exposure, but concealed this information from plaintiff, knowing that plaintiff would be injured.[3]

Count 1 of his claim is a 905(b) claim for vessel negligence against defendant "in its capacity as the owner *pro hac vice* and/or operator of the vessels."  This claim fails because there is no admiralty jurisdiction for ships under construction and because while HII was the builder of these U.S. Naval war ships, it was never the owner or owner *pro hac vice* of the vessels.

Count 2 of plaintiff's claim is based on his allegation that his injury arose from the defendant's "willful acts."  This claim fails because the Longshore and Harbor Worker's Compensation Act is the plaintiff's exclusive remedy for injuries suffered on the job, plaintiff's allegations do not rise to the level of intentional tort, and his petition is devoid of any facts which could support an intentional act claim.

---

[1] R. Doc. 40, par. 3.

[2] R. Doc.40, par. 20.

[3] R. Doc. 40, par. 23-25.

Count 3 alleges that if "he does not fall within the provisions and coverage of the LHWCA," then plaintiff has "a claim for strict liability of Defendant as the custodian and/or owner of the facilities and/or vessels that caused damage to Petitioner." This claim fails because if plaintiff is not a Longshoreman, then his exclusive remedy is under Louisiana State Worker's Compensation Act, which, like the Longshore Act, does not allow for negligence and strict liability exceptions to its exclusivity provisions, either.

Finally, there is no admiralty or general maritime subject matter jurisdiction in this case. Shipbuilding is not a traditional maritime activity and a vessel which is still under construction is not a "vessel" for admiralty jurisdiction purposes.

Plaintiff is not entitled to recover under any of these theories, and his claims must be dismissed. Plaintiff is limited to his worker's compensation remedies under the Longshore Act, and may not pursue a tort recovery against his employer.

## RULE 56 STANDARDS

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a Motion for Summary Judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law.[4] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[5] The non-

---

[4] Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 106 S.Ct. 2505, 2509-10 (1986).

[5] *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.[6]  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.[7]

### ADMIRALTY JURISDICTION DOES NOT EXIST

Plaintiff has suggested that jurisdiction over his personal injury claim against his employer is cognizable under "28 U.S.C. 905(b) of the LHWCA for vessel negligence, the General Maritime Law, and diversity of citizenship," with pendant jurisdiction over his state law claims.[8]  This is legally incorrect.

There must first be admiralty jurisdiction in order to have a 905(b) claim.  However, shipbuilding is not a maritime activity and there is, therefore, no admiralty jurisdiction and the case should be dismissed.

Defendant, HII, recently confronted this identical issue in a suit brought by a subcontractor's employee.  In *Crace v. Northrop Grumman Ship Sys., Inc and Huntington Ingalls, Inc.,* 12-1986, (E.D. La. 7/8/15), Judge Triche-Milazzo granted a Summary Judgment to HII on these exact issues, and the dismissal was upheld *per curiam* by the Fifth Circuit in an unpublished opinion.  In *Crace*, defendant sought dismissal of Plaintiff's 33 U.S.C. § 905(b)

---

[6] *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).

[7] *Saunders v. Michelin Tire Corp*., 942 F.2d 299, 301 (5th Cir. 1991).

[8] R. Doc. 40, par. 1.

claim because it was not the owner *pro hac vice* of the *New York*,[9] and dismissal of his maritime

negligence claim for lack of jurisdiction. In dismissing the suit, the Court wrote that:

> Because the Court concluded that it lacks maritime jurisdiction
> over this matter, a necessary prerequisite to a 905(b) claim, it is not
> necessary to address Defendant's *pro hac vice* arguments.
>
> • • •
>
> It is well established, however, that shipbuilding is not a traditional
> maritime activity. As the Fifth Circuit has routinely observed, "a
> contract to build a vessel is nonmaritime in nature."
>
> Furthermore, "vessels under construction give rise to neither a
> maritime contract nor a maritime tort." Indeed, the Fifth Circuit
> has specifically held that "a tort arising out of work on a launched
> but incompleted vessel also lacks maritime flavor, despite the fact
> that the vessel is lying in navigable waters." (internal citations
> omitted).

To bring a maritime tort claim, the tort must occur on navigable waters and the alleged

wrong must "bear a significant relationship to traditional maritime activity."[10] There is no

significant nexus to maritime activity if a ship is under construction, because shipbuilding is not

a traditional maritime activity.[11] The Fifth Circuit has held that ""a structure under construction

remains a non-vessel until it is complete and ready for duty upon the sea."[12] Here, plaintiff has

admitted that his work on the vessel was all during construction, so his claim fails.

---

[9] The *New York* was LPD 21, one of the same ships on which plaintiff worked.  Complaint, par.16.

[10] *Richendollar v. Diamond M Drilling Co.*, 819 F.2d 124, 127 (5th Cir. 1987) (en banc).

[11] *Cain v. Transocean Offshore USA, Inc.,*  518 F.3d 295, 301-03 (5th Cir. 2008); *Alfred v. MV Margaret Lykes,* 398 F.2d 684, 685 (5th Cir. 1968).

[12] *Cain*, 518 F.3d at 301; see also *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1187 (5th Cir. 1984) (stating that "an injury to a ship construction worker on board a ship under construction and lying in navigable waters is not a maritime tort" (citing *Hollister v. Luke Constr. Co.*, 517 F.2d 920, 921 (5th Cir. 1975)); *Casas v. U.S. Joiner*, LLC, 372 F. App'x 440, 441 (5th Cir. 2010).

The Honorable Ivan Lemelle recently addressed this issue in *Miles On Behalf of Miles v. Vt Halter Marine Inc.*[13]  In that case, plaintiff was a rigger who died while working on a barge under construction.  His family filed suit alleging "that admiralty and maritime jurisdiction exists as the case is brought pursuant to the General Maritime Law and 33 U.S.C. §905(b)."  Defendants moved for summary dismissal because the barge under construction was not a vessel for purposes of admiralty jurisdiction, and there was no maritime tort because "ship construction" is not a traditional maritime activity sufficient to give rise to a maritime tort.  In granting the motion, the court agreed that "because the barge on which Magee was working at the time of the incident was not yet completed, the structure was not a vessel for purposes of admiralty jurisdiction."

In support of its ruling, the court cited to *Casas v. U.S. Joiner.*[14]  Casas's tort claim had no maritime nexus because defendant's negligence arose in the context of shipbuilding, which is not a maritime activity.  Casas argued that the activity that caused his injury bore a significant relationship to maritime activity because his work on the LPD-19 was necessary for the vessel to accomplish its purpose, but the court disagreed.

*Hollister v. Like Constr. Co.*,[15] is cited as authority for this holding, as is *Cain v. Transocean Offshore,*[16] noting the "historic tradition that vessels under construction give rise to neither a maritime contract nor a maritime tort."[17]  There is no admiralty jurisdiction for a loss on

---

[13] 792 F.Supp.2d 919 (E.D. La. 2011).

[14] *Supra*, footnote 7.

[15] 517 F.2d 920 (5th Cir. 1975) (*per curiam*).

[16] *Supra,* footnote 6.

[17] *See, also, Owens-Illinois, Inc. v. U.S. Dist. Court for the W. Dist. Of Wash.*, 698 F.2d 967, 970 (9th Cir. 1983) (tort claims arising from asbestos exposure during new ship construction do not bear a significant relationship to traditional maritime activity); and *Keene Corp. v. U.S.*, 700 F.2d

a ship still under construction.  Plaintiff concedes in his Complaint that the ships that he worked

on were not complete.  Otherwise, he would be a sailor in the U.S Navy, not an employee of the

shipbuilder.  Therefore, no admiralty jurisdiction exists and plaintiff's 905(b) claim must be

dismissed along with any other allegation of claims arising under "general maritime law."

**33 U.S.C. 905(b)**

**DEFENDANT IS NOT THE OWNER OF THE VESSEL**

Even if there was maritime jurisdiction, plaintiff would not have a claim against this

defendant because HII was never the owner of the ship or the owner *pro hac vice*.  HII was the

ship builder.  All of the ships upon which plaintiff worked were "owned" by the United States of

America.

Under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*

("LHWCA"), an employer is immune from liability for tort claims brought by one of its

employees.  Section 905(b) allows a plaintiff to sue his employer for 'vessel negligence' <u>only</u> if

the defendant is both the employer <u>and</u> the vessel owner or the vessel owner *pro hac vice*.

The Fifth Circuit has held that:

> For (pro hac vice) ownership to be found, it is generally necessary
> for the defendants' relationship to be that of shipowner-bareboat
> charterer. . . . . The charterer takes over the ship, lock, stock and
> barrel, and mans her with his own people. He becomes ... the
> owner *pro hac vice* just as does the lessee of a house and lot, to
> whom the demise charterer is analogous. Though the ship repairer
> is a bailee, and to that extent is like a charterer, he plainly does not

---

836, 844 (2d Cir. 1983) ("a tort arising out of work on an uncompleted vessel has been held to
fall outside admiralty jurisdiction.").

have the degree of control over the vessel that the charterer, the owner pro hac vice, has.[18]

It is uncontested that the *USS New York* was an incomplete vessel owned by the United States Navy on the date of plaintiff's accident. (Complaint, ¶ 13-16). Therefore, plaintiff has no 905(b) claim against defendant as the vessel owner.

The law is settled that a ship builder cannot be treated as either an owner or an owner *pro hac vice* for purposes of Section 905(b). In *Bossard v. Port Allen Marine Serv., Inc.*,[19] plaintiff's husband died from inhaling toxic fumes while working on a barge. The barge was owned by Exxon and was being serviced by Port Allen Marine. Plaintiff sued her husband's employer, Port Allen, under § 905(b), alleging that Port Allen was the owner *pro hac vice* of the barge.

Port Allen moved for summary judgment, which was granted by the trial court and affirmed by the Fifth Circuit because Port Allen did not have the complete control necessary for finding ownership pro hac vice. The facts of *Hess v. Port Allen Marine Serv., Inc.*,[20] are identical to those of *Bossard*, and the court came to the same conclusion.

Another often-cited case for this proposition is *Ducote v. Int'l Operating Co. of La., Inc.*[21] Plaintiff was injured while cleaning a barge owned by Riverway Company. The plaintiff sued his employer, Burnside, as an alleged owner *pro hac vice* under Section 905(b).

Burnside was a cargo terminal company that did not own or operate any vessels; rather, it performed work only at the instruction of the barge owner. The court found that Burnside was

---

[18] *Ducote v. Int'l Operating Co. of La., Inc.,* 678 F.2d 543, 545 (5th Cir. 1982); *Gautreaux v. Tetra Applied Technologies, LLC*, No. 08-4645, 2010 WL 1930925 *9 (E.D. La., May 10, 2010) (Berrigan, J.).

[19] 624 F.2d 671 (5th Cir.), *reh'g denied*, 629 F.2d 1349 (1980).

[20] 624 F.2d 673 (5th Cir. 1980).

[21] *Supra*, footnote 13.

no more than a bailee hired to clean and load the barge.  It could not use the barge for its own purposes, and its temporary custody was for limited purposes and not for maritime commerce.

In *Trussell v. Litton Systems, Inc.*,[22] the Fifth Circuit specifically held that a shipyard having no more than custody and control of a vessel for purposes of effecting its construction cannot be deemed an owner *pro hac vice* of the vessel or otherwise be deemed a vessel.  In that matter, the Court concluded that "[a] shipbuilder--like a ship repairer--does not have the unrestricted use of a vessel required of an owner pro hac vice."[23]  Therefore, the court held that Litton was "not subject to liability to plaintiff under section 905(b)."

The Fifth Circuit relied on *Trussell* in *Avondale Shipyards, Inc. v. Insured Lloyd's*.[24]  In this case, plaintiff was injured while working on a vessel under construction by Avondale for Ogden Shamrock Transport.  The Court held that Avondale was not the *pro hac vice* owner of the vessel, and did not otherwise stand in such relation to it as to be deemed a vessel owner under section 902(21) for purposes of section 905(b).

Although not decided by the Fifth Circuit, a case with similar facts is *Bernier v. Johns-Manville Sales Corp.*[25]  In *Bernier*, plaintiffs were injured while working on vessels being repaired by Bath Iron Works, a privately owned shipyard.  A third party action was filed against Bath Iron Works as alleged owner *pro hac vice* under Section 905(b).  The court defined an owner *pro hac vice* as:

> [O]ne who assumes by charter or otherwise "exclusive possession, control, command and navigation" of a vessel for a specific period

---

[22] 753 F.2d 366 (5th Cir. 1984), overruled on other grounds by *Richendollar v. Diamond M Drilling Co.*, 819 F.2d 124 (5th Cir. 1987).

[23] 753 F.2d at 368.

[24] 786 F.2d 1265 (5th Cir. 1986).

[25] 457 F. Supp. 389 (D.C. Me. 1982).

> of time … An owner pro hac vice has "complete – though perhaps only temporary – dominion over the vessel entrusted to him.  He commands her navigation and is entitled to avail himself fully of her services."  … It is therefore tantamount to, though just short of, an outright transfer of ownership.

Defendant never had "complete dominion" over the Navy's vessel of war.  The Navy would certainly have an objection if the shipyard decided to take this billion dollar vessel of war on a joy ride or otherwise "fully avail themselves of her services."

Defendant never had anything close to full ownership or control of the Navy's warship, and thus simply does not meet the definition of an owner *pro hac vice* for the purposes of a 905(b) claim.  Those claims must be dismissed even if admiralty jurisdiction existed.

## INTENTIONAL TORT EXCEPTION TO THE EXCLUSIVITY OF THE LHWCA

33 U.S.C. § 905(a), provides:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

The exclusive remedy provision of the LHWCA eliminates <u>all</u> other causes of action for negligence, strict liability, wrongful death or otherwise, except for a very narrow intentional tort exception.[26]  That judge-made exception, while often discussed, is strictly construed and very rarely applied because it requires proof of the specific intent to injure the specific employee.  Nothing that plaintiff has even pled comes close to meeting that standard.

> The overwhelming weight of authority is that "the common law liability of the employer cannot be stretched to include accidental

---

[26] 33 U.S.C. § 905(a); *Houston v. Brechtel Associates Prof. Corp.*, 522 F. Supp. 1094 (D.C.C. 1981); *Johnson v. ODECO Oil and Gas Co*., 579 F. Supp. 604 (E.D. La. 1987), aff'd, 864 F.2d 40 (5th Cir. 1989); *Roy v. Bethelehem Steel,* 838 F. Supp. 312 (E.D. Tx. 1993).

> injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct short of genuine intentional injury." **Nothing short of a specific intent to injure the employee falls outside the scope of § 905(a).** Absent such specific intent, the employee is foreclosed from maintaining a tort action against his employer.
>
> **Knowledge and appreciation of a risk is not the same as the "intent" to cause injury.** Neither knowingly permitting a hazardous work condition to exist, nor willfully failing to furnish a safe place to work, nor even willfully violating a safety statute constitutes the requisite intent. See: 2A Larson, *Workmen's Compensation Law,* § 68.13 (1976).
>
> At most, plaintiff alleges that defendant willfully, wantonly, recklessly, and unlawfully exposed him to dangerous working conditions. These allegations are insufficient.[27]

As explained in the *Johnson v ODECO* District Court opinion

> Employer misconduct that does not fall within the intentional tort exception [of the LHWCA] includes: knowingly permitting a hazardous work condition to exist; willfully failing to furnish a safe place to work; intentionally failing to warn the employee of the dangers and health hazard to which he could be exposed; and willfully and unlawfully violating a safety statute.[28]

In *Johnson*, plaintiff was injured on an offshore platform during a hurricane, and he claimed that his employer knew with substantial certainty that he would be harmed. The Fifth Circuit refused to allow plaintiff to circumvent the exclusivity provisions of the LHWCA, finding that in order to do so the plaintiff would have to prove that the defendant:

> "deliberately left its employees on OBM No. 1 for the purpose of exposing them to injury by a hurricane. As his brief plainly states, the most he can aver is that ODECO made a decision which any reasonable person would foresee might result in injury. This is negligence language, not the description of any intentional tort

---

[27] *Houston,* 522 F. Supp. at 1096.

[28] *Johnson,* 579 F. Supp. at 607.

> with which we are familiar. Hence, as the district court noted, Johnson's exclusive remedy lies within the LHWCA."[29]

This federal law is consistent with the Louisiana definition of intentional injury.[30]

Under the applicable law, plaintiff has not actually managed to set forth a viable intentional tort claim. Instead, he claims that defendant "knew or should have known . . . that it was exposing DWARF D. CANNON to excessive and loud noise and/or toxic fumes," that they "concealed this information and failed to disclose it to Petitioner," and that defendant knew that the injuries "were substantially certain to follow."[31]   As in *Johnson,* that "knew or should have known" claim is negligence language. In Paragraph 32 of his complaint, plaintiff lists a series of negligent acts which he refers to as "willful acts." None of those allegations are sufficient to qualify as an intentional tort allegation under either Federal or State law. Nowhere does he allege that his employer was actively trying to injure him. Therefore, he has no claim.

Even if he had pled that there was an intentional tort, the Complaint is legally insufficient because it contains no facts to support the claims. There are only conclusions, with no factual basis contained in the pleading. To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[32] Conclusory allegations or legal conclusions masquerading as factual conclusions will not

---

[29] 864 F.2d. 44.

[30] *See Gallon v. Vaughan Contractors, Inc.,* 619 So.2d 746 (La. App. 4th Cir. 1993); *King v. Schulykill Metals Corporation*, 581 So.2d 300, 302 (La. App. 1st Cir. 1991); Faridina v. Ecolab, Inc., 593 So.2d 936 (La. App. 4th Cir. 1992); *Wilson v Kirby*, 12-0080, 2012 WL 1565415 (E.D. La. 2012); *Fisher v. Halliburton*, 667 F.3d 602, 617 (5th Cir. 2012).

[31] R. Doc 40, par. 23-25.

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

suffice.[33]  Any allegation that the employer intended to cause an injury to this employee would be implausible on its face and unsupported by any factual allegations.

In considering a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  But, in deciding whether dismissal is warranted, the Court will <u>not</u> accept conclusory allegations in the complaint as true.  Pleadings that are conclusory are not entitled to the assumption of truth. Legal conclusions "must be supported by factual allegations."  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief."[34]

The Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[35]  Even a conclusory allegation that the employer was actively trying to harm the plaintiff, without specific facts showing how that is so, would not suffice.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  This is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  Where a Complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  When it contains no facts at all, and merely contains legal conclusions, it clearly falls short of proper pleading.

In this case, plaintiff has not pled one single fact to justify his conclusion that defendant acted willfully, much less that defendant intended that this plaintiff be injured.

---

[33] *Taylor v. Books A Million, Inc*.,  296 F.3d 376, 378 (5th Cir. 2002).

[34] *Woods v. Bocz*, 11-1146, (E.D. La., 9/19/11), 2011 WL 4368831. (internal citations omitted).

[35] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009),(quoting *Iqbal*, 129 S. Ct. at 1949 (2009).

## <u>CONCLUSION</u>

Plaintiff claims that he is entitled to relief under 33 U.S.C.A. 905(b) and the general maritime law.  Those Count 1 claims fail because there is no admiralty jurisdiction.  There is no admiralty jurisdiction because a vessel under construction is not yet a vessel, and shipbuilding in not a traditional maritime activity or concern.  Even if there was jurisdiction, plaintiff's 905(b) claim would fail because the employer was not the owner or owner *pro hac vice* of the boat upon which plaintiff was injured.

The intentional tort claims in Count 2 fail because plaintiff's allegations do not rise to the level of intentional tort and because plaintiff failed to plead any facts to support his conclusory allegations.

Count 3 fails because if the LHWCA does not apply, plaintiff's state law claims fail because the exclusivity provisions in Louisiana's Worker's Compensation Law prevent suits against the employer as well.  However, the LHWCA does apply, and its exclusivity provisions absolutely prevent plaintiff from suing his employer in tort.  Defendant prays that this Court dismiss plaintiff's claims with prejudice and at plaintiff's cost.

Respectfully submitted,

**BLUE WILLIAMS, L.L.P.**

*/s/ Thomas G. Buck*
_____
BRIAN C. BOSSIER (# 16818) **T.A.**
THOMAS G. BUCK (#14107)
EDWIN A. ELLINGHAUSEN, III (#1347)
CHRISTOPHER T. GRACE, III (# 26901)
ERIN H. BOYD (#20121)
LAURA M. GILLEN (#35142)
PATRICK K. SHOCKEY (#36021)
3421 N. Causeway Blvd., Suite 900
Metairie, LA  70002
Telephone: (504) 831-4091
Facsimile: (504) 849-3055
***Attorneys for Huntington Ingalls
Incorporated***